ELAINE S. ELMORE v. BROUGHTON HOSPITAL

No. 8410IC1353

(Filed 17 September 1985)

Master and Servant § 64.1— workers' compensation—compensability of injuries from attempted suicide

The Industrial Commission did not err in finding that plaintiff's suicide attempt was caused by her "mental depression and derangement" directly related to and caused by a prior compensable back injury and that plaintiff was thus entitled to compensation for injuries received as a result of the suicide attempt where there was evidence tending to show that plaintiff attempted to take her own life because she could not bear the pain resulting from the back injury, felt there was no hope for improvement and became severely depressed by reason thereof. G.S. 97-12(3).

APPEAL by defendant from the North Carolina Industrial Commission Opinion and Award entered 5 July 1984. Heard in the Court of Appeals 22 August 1985.

Plaintiff received a compensable injury to her back on 1 July 1975 while working for defendant as a health care technician. She underwent two surgical operations: a laminectomy and fusion in February 1979 and a refusion in May 1981. In October 1981 plaintiff resumed work with defendant. On 1 November 1981 plaintiff suffered another injury by accident to her back when a patient grabbed her right arm and pulled her to the floor. Plaintiff was diagnosed as having fibrosis of the back secondary to her injury and surgeries. The parties stipulated that this injury arose out of and in the course of plaintiff's employment with defendant.

On 20 April 1982 plaintiff attempted suicide by jumping off the deck of her house, sustaining numerous and disabling injuries

Elmore v. Broughton Hospital

as a result. She requested additional compensation for those injuries, claiming that her suicide attempt was caused by depression which resulted directly from her 1 November 1981 injury. The Full Commission, with Chairman Stephenson dissenting, found plaintiff to be entitled to additional compensation due to the additional injuries suffered in the suicide attempt. Defendant appeals.

*Daniel and Kuehnert, P.A., by Daniel A. Kuehnert for plaintiff appellee.*

*Attorney General Lacy H. Thornburg and Russell, Greene & King, P.A., by Sandra M. King, for defendant appellant.*

MARTIN, Judge.

The sole issue on appeal is whether the Industrial Commission erred in finding that plaintiff's suicide attempt was due to "mental depression and derangement," directly caused by and related to her compensable November 1981 injury, and in concluding therefrom that she was entitled to compensation for injuries sustained as a result of the suicide attempt. We discern no error in the award.

The scope of review on appeal from an award of the Industrial Commission is whether the Commission's findings of fact are supported by competent evidence in the record, and whether such findings support its legal conclusion. *Perry v. Hibriten Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978). This Court does not weigh the evidence; if there is any evidence of substance which directly or by reasonable inference supports the Commission's findings, we are bound by such findings even though there may be evidence to the contrary. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 201 (1981); *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 266 S.E. 2d 760 (1980).

Evidence before the Commission included the following: Dr. Eugene Willett, an orthopedic surgeon, testified that, in his opinion plaintiff had reached maximum medical improvement with respect to her 1 November 1981 injury on 27 January 1982, and suffered from chronic pain. As a result of her suicide attempt on 20 April 1982, plaintiff fractured her right heel, fractured her pelvis on both sides, dislocated her right elbow, fractured her

right wrist, fractured her left leg and fractured a vertebra in her back. By reason of these injuries, Dr. Willett testified that plaintiff sustained an additional 5% permanent partial disability to her back, 20% permanent partial disability to her right arm, and 10% permanent partial disability to her right hand. Dr. Willett testified that plaintiff had not yet reached maximum medical improvement from those injuries. Dr. John Sherrill testified that plaintiff was totally disabled as a result of her 20 April 1982 injuries.

Dr. Norman Boyer, plaintiff's psychiatrist, testified that he had known plaintiff for ten or eleven years. In late 1971 and 1972 plaintiff had been depressed and suicidal, but prior to her 1981 injury she was "getting along beautifully." Dr. Boyer said that prior to her injury plaintiff was an excellent worker, that she was interested in her job and had a great deal of self-esteem because of her abilities, and she was happy. In his opinion, her prior psychiatric problems were completely behind her at the time of her November 1981 injury. That injury caused plaintiff's depression because of the pain and the change in lifestyle caused by the injury. Plaintiff was unable to work, and her self-esteem due to her abilities at her job was lost. She could no longer do the things she enjoyed due to her physical condition and financial difficulties. She became fearful of losing her home. All of these factors added to plaintiff's depression. Because of the pain, there was more depression than there otherwise would have been. Along with the depression she suffered a personality change, consisting of irrationality, anti-social feelings, irritability and paranoid feelings. On 20 April 1982 plaintiff had become "more and more depressed and hopeless and desperate about the situation" and, because of "an accumulation of all of these things," she attempted suicide. Dr. Boyer also testified that "hopelessness about the future is generally the *sine qua non* of suicide" and that "the maximum severity of depression is suicide." When asked whether, in his opinion, plaintiff's suicide attempt could have been caused by her back pain and the problems which she developed following her back injury, Dr. Boyer answered, "I think it is all connected, yes, all part of the same syndrome."

Barbara Burns, who lived with plaintiff, testified that plaintiff had undergone a personality change after the 1 November 1981 injury. She was withdrawn, discouraged and depressed and was obviously suffering from a great deal of pain. She also testi-

fied that after plaintiff's medical appointment on 20 April 1982, plaintiff was "completely withdrawn" and "completely depressed." Plaintiff testified that she attempted suicide because she wanted to die after learning from her physician that her pain was something she "was going to have to live with."

Defendant argues that the following findings of fact made by the Commission are not supported by sufficient competent evidence:

> 6. . . . Plaintiff became mentally depressed and deranged as a result of her continuing back pain and her inability to work and carry out other activities as a consequence of her stipulated injury. On 20 April 1982, after a visit to Dr. Willett, plaintiff stood on a chair on the deck of her home and jumped off in a suicide attempt.

> . . . .

> 8. Plaintiff's mental depression and derangement, her feelings of hopelessness and desperation, which caused her suicide attempt and her resulting injuries, were directly related to and caused by plaintiff's 1 November 1981 injury which disabled her from work and forced her disability retirement. Plaintiff has been totally disabled since 20 April 1982 as a result of her 1 November 1981 injury and the injuries suffered in her suicide attempt.

On the basis of its findings, the Commission concluded that plaintiff was entitled to compensation for a specified period of time "for an additional five percent permanent partial disability of the back resulting from her compensable injury of 1 November 1981" and "to compensation at the same weekly rate from the date of her suicide attempt for as long as she remains totally incapable of earning wages."

Defendant argues that, although there was evidence that plaintiff was depressed, the evidence does not show that she was "deranged." According to defendant, without proof of derangement, plaintiff is barred from recovery under G.S. 97-12 which provides:

> No compensation shall be payable if the injury or death to the employee was proximately caused by:

> . . . .

(3) His willful intention to injure or kill himself or another.

Defendant bases its argument on its interpretation of *Petty v. Associated Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970). In our view, this reliance is misplaced. In *Petty*, Edgar Petty's widow sought to recover death benefits under G.S. 97-38. Petty had been working for defendant as a truck driver, and was injured on 13 February 1966 when a two-pound hunk of concrete fell into his truck and fractured his right cheek and shattered his jawbone. His doctor drilled holes in his jaw and wired it together and placed wires around his teeth. Petty could not talk or eat and he lost forty pounds. He suffered severe pain from muscular spasms in his face, neck and jaw, could not yawn, and had numbness in his lower lip and jaw. Prior to the accident Petty was happy, healthy and well-adjusted. After the accident he was depressed and anxious, and had thoughts of killing his wife and mother-in-law. On 8 July 1966 Petty shot himself in the head and died. Dr. W. D. Clarkson testified that in his opinion the injury Petty received on 13 February could have contributed to Petty's depression. Dr. Clarkson described his condition as "involutional psychotic depression." Nonetheless, the Full Commission found that Petty's death "was occasioned by his willful and premeditated intention to kill himself," and concluded that G.S. 97-12 barred plaintiff from recovering any compensation. In reversing the Commission, our Supreme Court adopted the "chain of causation" test, holding that "an employee who becomes mentally deranged and deprived of normal judgment as a result of a compensable accident and commits suicide in consequence does not act wilfully within the meaning of G.S. 97-12." *Id.* at 428, 173 S.E. 2d at 329. The case was remanded to the Industrial Commission for a specific finding as to whether Petty's death was attributable to "an abnormal mental condition" resulting from his injury by accident. *Id.* at 429, 173 S.E. 2d at 330.

More recently this issue was addressed in *Thompson v. Lenoir Transfer Co.*, 48 N.C. App. 47, 268 S.E. 2d 534, *disc. rev. denied*, 301 N.C. 405, 273 S.E. 2d 450 (1980). In that case John H. Thompson injured his leg in an automobile accident in the course of his employment. He died in December 1976 as a result of an overdose of pain medication. The Deputy Commissioner found as fact that prior to the accident Thompson had been well-adjusted, active and fun-loving, but between his accident and his suicide he

was "quite depressed and dejected." The Deputy Commissioner denied death benefits to Thompson's widow, based on his conclusion that the depression was not shown to be sufficient to cause the suicide, and therefore, the suicide was willful and intentional. This court vacated and remanded the opinion and award, and held that the Commission erred in excluding evidence of Thompson's physical and mental condition, because the evidence was relevant to appellant's theory that the work related injury caused Thompson such pain and depression that he was caused to commit suicide. The court discussed *Petty* noting that the issue is not whether the employee has knowledge that he is killing himself, but whether there is an unbroken chain of causation from the compensable injury to the suicide. The court reviewed the testimony of Thompson's doctor, wife and friends: Thompson's orthopedic surgeon testified that "the severe pain and depression could have contributed to decedent's death." Thompson's wife said he had been despondent and "in real bad pain." Thompson's friends testified that he was depressed, "could hardly stand the pain," was "down in the dumps," and had cried. The court held that under *Petty*, if the Commission were to find the above stated facts as true, Thompson's wife would be able to recover death benefits. In other words, a finding that decedent's injury caused him to be very depressed and in a lot of pain, which caused him to commit suicide, was sufficient to come within the *Petty* exception to G.S. 97-12.

The evidence in the instant case clearly satisfied the standard set forth in *Petty* and applied in *Thompson*. In both cases, the abnormal mental condition shown by the evidence was precipitated by pain, manifested by personality change and described as "depression," evidence strikingly similar to that presented by plaintiff. There was considerable evidence that plaintiff attempted to take her life because she could not bear the pain which resulted from her injury, felt that there was no hope for improvement in her situation and became severely depressed by reason thereof. This was sufficient evidence of an abnormal mental condition to support the Commission's finding that plaintiff suffered from "mental depression and derangement" directly related to and caused by her compensable injury and that such condition caused her suicide attempt and resulting injuries. This finding supports the Commission's award of compensation.

In her brief, plaintiff attempts to argue that the Commission erred in failing to award permanent and total disability benefits. Although the evidence would arguably support such an award, plaintiff failed to cross-appeal from the complained-of portion of the Commission's award. We therefore decline to disturb it.

Affirmed.

Judges WEBB and BECTON concur.